IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 25-941-BAH |
| MATTHEW J. TIMBARIO ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Hartford Casualty Insurance Company ("Hartford" or "Plaintiff") brought suit against Matthew J. Timbario ("Matt")[1] and Courtney A. Timbario ("Courtney") (collectively "Defendants") alleging its entitlement to contractual indemnification, the first and only count of Plaintiff's complaint. ECF 1. Defendants filed an answer and counterclaim, ECF 6, seeking declaratory judgment regarding the scope of Courtney's potential liability to Hartford. Defendants have also filed a third-party complaint against John W. Gilmore ("John") and Tina G. Gilmore ("Tina"), Patriot Construction, LLC ("Patriot"), and Ferry Landing Road, LLC ("Ferry") (collectively "Third-Party Defendants"). ECF 9. Pending before the Court is Plaintiff's motion to dismiss Defendants' counterclaim for a declaratory judgment. ECF 11. Defendants filed an opposition, ECF 15, and Plaintiff filed a reply, ECF 16. All filings include memoranda of law.[2]

---

[1] In using the name "Matt" to refer to Matthew J. Timbario, the Court mirrors the Defendants' previous filings. *See, e.g.*, ECF 6.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiff's motion is **GRANTED**.

## I.   BACKGROUND

Hartford "acts as a corporate surety that issues performance and payment bonds on behalf of selected general contractors and subcontractors performing construction contracts for public and private owners." ECF 1, at 2 ¶ 7. This case arises out of performance and payment bonds that Hartford provided for various construction projects for the benefit of Patriot, "a general contractor in the business of performing construction work," along with individual indemnitors Matt and Courtney, among others. ECF 1, at 2–3 ¶¶ 8–9. As a condition precedent of providing such bonds, Plaintiff required, on or about September 4, 2014, the execution of a general indemnity agreement by Defendants and Third-Party Defendants ("First Indemnity Agreement"). ECF 1, at 2–4 ¶¶ 9–11; ECF 6, at 2–3 ¶¶ 9–10.

Several years after the execution of the First Indemnity Agreement, Matt and John apparently created Ferry for the purpose of buying real property, upon which they built an office building. ECF 6, at 8–9 ¶¶ 48–49; *see also* ECF 11-1, at 1–2. Hartford requested another general indemnity agreement ("Second Indemnity Agreement") on or about June 4, 2020, in which Hartford "sought to add Ferry . . . as an indemnitor for the Patriot bonding facility." ECF 6, at 8; ECF 11-1, at 1–2. Defendants allege that in light of the addition of Ferry, they were advised by Patriot's bond agent to request Courtney and Tina "be released from the indemnity obligations for future bonds." ECF 6, at 9 ¶ 50; ECF 11-1, at 2 ("Upon request, Hartford agreed to not include the signatures of Matthew Timbario's spouse, Defendant Courtney A. Timbario, and John Gilmore's spouse, third-party defendant Tina G. Gilmore, on the Second Indemnity Agreement."). Accordingly, Matt and John as individual indemnitors, along with Patriot and Ferry, executed the Second Indemnity Agreement for the benefit of Hartford. ECF 6, at 9 ¶ 51; ECF 1, at 4 ¶ 11.

2

Hartford now brings suit in part against Courtney for contractual indemnification on the theory that that she did not cancel or terminate the indemnity or perform other obligations in the manner required by the First Indemnity Agreement. ECF 11-1, at 2; *see also* ECF 1, at 8–9 ¶¶ 30–36; ECF 6, at 6–7 ¶¶ 27, 40–41.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." "The Rule 12(b)(6) standard governing counterclaims is identical to that which governs complaints." *State Farm Fire & Cas. Co. v. Richards*, No. 3:24-CV-00803 (MRC), 2025 WL 2722658, at *1 (E.D. Va. Sept. 24, 2025). Thus, the same caselaw interpreting motions to dismiss a complaint applies in equal force to motions seeking dismissal of a counterclaim. *See Constan Gervais St. Car Wash, Inc. v. Auto-Owners Ins. Co.*, No. CV 3:24-1392-MGL, 2025 WL 2173488, at *3 (D.S.C. July 31, 2025) (substituting "counterclaim" for "complaint" and utilizing the traditional 12(b)(6) standard to analyze a motion to dismiss a counterclaim). As it would in addressing a motion to dismiss a claim, the Court will discount the counterclaimant's legal conclusions and "accept as true all of the factual allegations in the [counterclaim]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court then draws all reasonable inferences in favor of the counterclaimant and considers whether the counterclaim states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A counterclaimant "must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745,

3

747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a counterclaim "will not be dismissed as long as [it] provides sufficient detail about [the counterclaimant's] claim to show that [the counterclaimant] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

The counterclaim against Hartford seeks declaratory judgment with respect to Courtney's liability.[3] ECF 6, at 11–13, at 13 ¶ 72. Defendants assert that declaratory judgment is proper because "there is an actual and justiciable controversy between Hartford and the Defendants with respect to what liability, if any, Courtney may be indebted to Hartford."[4] *Id.* at 11 ¶¶ 62–63. Plaintiff moves to dismiss the counterclaim here because it "seeks only declaratory judgment" and "is duplicative of the Defendants' affirmative defenses raised in response to the Complaint" in their Answer. ECF 11-1, at 1–2. Defendants primarily counter that "the relief sought through the Counterclaim is not merely 'redundant' to the affirmative defenses" of Defendants, but rather involves "multiple facets of proposed declaratory relief," including, in addition to the "'non-liability' of Courtney," a "declaration of rights relative to the 'Real Property Exemption'

---

[3] Although the allegations in the counterclaim also mention Tina, ECF 6, at ¶¶ 61, 63, the ultimate request for declaratory relief concerns Courtney's liability alone, *id.* at 13 ¶ 72.

[4] Defendants contend that they "also seek equitable relief such as *reformation*" in their counterclaim. ECF 15, at 5 (emphasis in original). However, the counterclaim is framed as a request for a declaratory judgment under 28 U.S.C. § 2201 regarding Courtney's liability to Hartford. *See* ECF 6, at 11, at 13 ¶ 72. The counterclaim's mention of "reformation" is not asserted as a separate request for equitable relief, but rather is mentioned as the possible result of a declaration regarding Courtney's liability under the First Indemnity Agreement, considering Defendants' assertion that a provision of that agreement purportedly permits reformation. *See* ECF 6, at 12 ¶ 65–66. Accordingly, Defendants' argument on this point does not meaningfully impact the Court's analysis or alter its conclusion that the counterclaim should be dismissed.

4

incorporated as an Addendum to the First Indemnity Agreement" and a clarification of "the role that Mr. Douglas Dixon[] played in the process of negotiating and executing the Second Indemnity Agreement." ECF 15, at 5–6.

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Court has discretion "in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) ("*Aetna*") (per curiam) ("This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief."). A "district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna*, 139 F.3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

However, "[w]hen declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank, FSB*, Civ. No. 11-0834, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011)). The same logic extends to counterclaims. "Courts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses." *Malibu Media, LLC v. Doe 1*, Civ. No. DKC 12-1198, 2012 WL 6681990, at *3 (D. Md. Dec. 21, 2012).

Defendants' request for declaratory relief asserts that "[a] dispute exists because . . . Courtney was released from prospective liability for any bonds issued after the execution of the Second Indemnity Agreement." ECF 6, at 11 ¶ 64. Defendants identify "strict compl[iance]" with the provisions of the First Indemnity Agreement, *id.* at 12–13 ¶¶ 65–68, and the question of whether the Second Indemnity Agreement constituted a "novation," *id.* at 13 ¶ 69, as issues which the Court should address so as to "terminate some or all of the existing controversy," *id.* at 13 ¶ 70. Plaintiff argues that three of Defendants' affirmative defenses render the counterclaim duplicative: (1) the first affirmative defense—that "[t]he Complaint fails to state a claim against one or both Defendants upon which relief can be granted," ECF 6, at 6 ¶ 37; (2) the fifth affirmative defense—that "Defendant Courtney A. Timbario denies the execution of the Second Indemnity Agreement, denies that she owes any indemnity obligations to Hartford for any bonds issued after June 4, 2020, and denies she owes any obligations under the Second Indemnity Agreement, to which she is not a party," *id.* at 7 ¶ 41; and (3) the sixth affirmative defense—"novation,"[5] *id.* at 7 ¶ 42. The Court agrees with Hartford.

The declarations Defendants seek are identical to some of their affirmative defenses. *Compare* ECF 6, 6–8 ¶¶ 37–44, *with id.* at 11–13 ¶¶ 59–72. Whether Courtney complied with the obligations of the First Indemnity Agreement and whether the Second Indemnity Agreement constituted a novation will be "adequately and directly addressed" in the course of litigating Plaintiff's original claim and the affirmative defenses raised thereto. *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015). And although Defendants suggest that a

---

[5] Generally, "a novation is 'a new contractual relation made with intent to extinguish a contract already in existence.'" *Bioiberica Neb., Inc. v. Nutramax Mfg., Inc.*, 554 F. Supp. 3d 729, 737 (D. Md. 2021), *aff'd*, No. 21-1978, 2023 WL 33571 (4th Cir. Jan. 4, 2023).

"declaration of rights relative to the 'Real Property Exemption' incorporated as an Addendum to the First Indemnity Agreement" and a clarification of "the role that Mr. Douglas Dixon[] played in the process of negotiating and executing the Second Indemnity Agreement" justify their counterclaim, ECF 15, at 5–6, Defendants fail to explain why those issues will not also be addressed in the course of litigating Plaintiff's original claim.

Defendants additionally contend that "in the context of the Plaintiff's admission that Courtney and Tina were intentionally not required to be signatories to the Second Indemnity Agreement," the "rights of all 'interested parties' could benefit from this Court's exercise of the equitable powers vested with the Court under 28 U.S.C. § 2201." ECF 15, at 6. Further, Defendants attempt to distinguish the instant case by noting that in *Wilton v. Seven Falls Company et al.*, 515 U.S. 277 (1995), among other cases, the lower court had considered the exercise of its discretion "while competing state court claims were also proceeding on parallel tracks." ECF 15, at 6. Here, by contrast, Defendants observe that "there are no other proceedings pending in other courts." *Id.* But neither point weakens the thrust of the logic on which the Court's holding rests: "where the declaratory judgment counterclaim[] simply re-assert[s] and [is] parallel to [Defendants'] affirmative defenses to the plaintiff's claims, it would be proper for the court to refuse to exercise jurisdiction over the counterclaim." *Yacht Basin Provision Co., Inc. v. Inlet Provision Co.*, No. 2:22-CV-02180-DCN, 2022 WL 17068795, at *8 (D.S.C. Nov. 17, 2022) (citing *Friends of DeReef Park v. Nat'l Park Serv.*, No. 2:13-CV-03453-DCN, 2015 WL 12807800, at *10 (D.S.C. May 27, 2015)). The Court thus agrees with Plaintiff that Defendants' counterclaim for declaratory relief should be dismissed.[6]

---

[6] Citing *Wilton*, Defendants also suggest that "this Court should deny the Motion to Dismiss until such time that all third-party defendants have appeared in the case" and "discovery in this case has come to a close." ECF 15, at 6 (citing *Wilton*, 515 U.S. at 288). To be sure, *Wilton* makes clear

7

The Court notes in closing that dismissal based on an allegation that a counterclaim duplicates an affirmative defense is often sought under Fed. R. Civ. P. 12(f), which permits a court, acting on its own or on a motion, to "strike from a pleading an insufficient defense or any redundant . . . matter." *See MST, LLC v. N. Am. Land Tr.*, No. 2:22-CV-00874-DCN, 2023 WL 3571500, at *5 (D.S.C. May 19, 2023) (collecting cases and noting that, often using Rule 12(f), "[m]any district courts have dismissed counterclaims that are duplicative of affirmative defenses"). Plaintiff did not seek to strike the counterclaim under Rule 12(f), perhaps because such "motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citing 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)). Further, though Rule 12(f) is arguably a better fit for Plaintiff's argument that the counterclaim merely duplicates affirmative defenses, "[m]any courts have also used Rule 12(b)(6) to dismiss duplicative counterclaims." *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12-2082JLR, 2013 WL 2468846, at *3 (W.D. Wash. June 7, 2013). "In any event, the standards under either rule are similar, and the result of the motion would be the same under either standard." *Id.* As such, the Court dismisses the counterclaim under Rule 12(b)(6) but notes that this outcome is also warranted under Rule 12(f).

---

that the Court has the power to stay a declaratory judgment action until such time. *Wilton*, 515 U.S. at 288 ("Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, *to stay or to dismiss* an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." (emphasis added)). But Defendants do not provide authority explaining *why* the Court would exercise its discretion to do so here.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted, and Defendants' counterclaim is dismissed.

A separate implementing order will issue.


Dated: October 14, 2025                                              /s/
                                                          Brendan A. Hurson
                                                          United States District Judge